**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A.<br><br>Plaintiffs,<br><br>v.<br><br>BACARA RIDGE ASSOCIATION<br>SFR INVESTMENTS POOL 1, LLC<br>ALESSI & KOENIG, LLC<br><br>Defendants. | Case No. 2:16-cv-02533-RFB-NJK<br><br>**ORDER** |
| SFR INVESTMENTS POOL 1, LLC<br><br>Cross/Counter Defendant<br><br>v.<br><br>DEREK L. SMITH;<br>THE BANK OF NEW YORK MELLON *as the Trustee for the Benefit of the Certificate Holders of the CWHEQ Inc., Home Equity Loan Asset-Backed Certificates, Series 2006-S2*<br>BANK OF AMERICA, N.A.<br><br>Cross/Claim Defendants | |

## I. INTRODUCTION

Before the Court are Defendant SFR Investments Pool 1, LLC's ("SFR") Motion for Default Judgment, SFR's Motion for Summary Judgment, and Plaintiff Bank of America, N.A.'s ("BANA") Motion for Partial Summary Judgment. ECF Nos. 73, 75, 76. For the following reasons the Court grants SFR's motions and denies BANA's motion.

## II. PROCEDURAL BACKGROUND

Plaintiff filed its complaint against Defendants on November 1, 2016. ECF No. 1. In the complaint, Plaintiff sought declaratory relief that a nonjudicial foreclosure sale conducted under Chapter 116 of the Nevada Revised Statutes ("NRS") did not extinguish a deed of trust it held on a Las Vegas property. SFR answered and asserted cross claims and counterclaims on December 20, 2016. ECF No. 21. BANA answered the counterclaim on February 10, 2017. ECF NO. 35. On April 11, 2017 the Court granted a stipulation staying litigation in light of pending decisions from the Nevada Supreme Court. ECF No. 45. On December 20, 2018, the Court lifted the stay. ECF No. 49. On February 15, 2019, BANA moved to amend its complaint. ECF No. 56. The Court granted the motion and BANA filed its amended complaint on March 11, 2019. ECF Nos. 65, 66. The HOA and SFR answered the amended complaint. ECF Nos. 67, 68. On June 25, 2019, SFR filed the instant motion for default judgment. ECF No. 73. On July 3, 2019, SFR moved for summary judgment. ECF No. 75. The motion was fully briefed. ECF Nos. 78, 81. On that same day, BANA also moved for summary judgment. ECF No. 76. That motion was also fully briefed.

## III. FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.[1]

---

[1] The Court takes judicial notice of the publicly recorded documents related to the deed of trust and the foreclosure as well as Fannie Mae's Single-Family Servicing Guide. Fed. R. Evid. 201 (b), (d); <u>Berezovsky v. Moniz</u>, 869 F.3d

- 2 -

**a. Undisputed facts**

This matter concerns a nonjudicial foreclosure on a property (the "Property") located at 6109 Glenborough Drive, North Las Vegas. The Property sits in a community governed by the Bacara Ridge Association. The HOA requires the community members to pay community dues.

Derek L. Smith borrowed funds from HomeAmerican Mortgage Corporation to purchase the Property in January 2006. To obtain the loan, Smith executed a promissory note and a corresponding deed of trust to secure repayment of the note. The deed of trust, which lists Smith as the borrower and HomeAmerican Mortgage Corporation as the lender, was recorded on January 26, 2006. On May 3, 2011, MERS recorded an assignment of the Deed of Trust to BAC Home Loans Servicing, LP ("BAC"). BANA succeeded to BAC's interest in the Deed of Trust following its merger with BAC on July 1, 2011. On April 8, 2015, BANA recorded an assignment of the deed of trust to U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust. On April 22, 2016 U.S. Bank recorded an assignment of the deed of trust to BANA.

Smith failed to pay the required HOA dues. From February 2011 through February 2012, the HOA recorded a notice of delinquent assessment lien concerning past-due assessments, followed by a notice of default and election to sell, and finally a notice of foreclosure sale against the Property. On July 11, 2012 the HOA foreclosed on its lien and purchased the Property for $7,831.36, as recorded in a trustee's deed upon sale recorded on February 14, 2013 and corrective trustee's deed upon sale recorded on March 18, 2013. On March 13, 2013 Bacara Ridge recorded a quit claim deed that conveyed the Property to SFR.

However, Federal National Mortgage Association ("Fannie Mae") previously purchased the note and the deed of trust in March 2006. While its interest was never recorded under its name,

---

923, 932–33 (9th Cir. 2017) (judicially noticing the Guide); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record).

- 3 -

Fannie Mae continued to maintain its ownership of the note and the deed of trust at the time of the foreclosure sale. BANA serviced the note on behalf of Fannie Mae, at the time of the foreclosure sale.[2]

The relationship between Fannie Mae and its servicers is governed by Fannie Mae's Single-Family Servicing Guide ("the Guide"). The Guide provides that servicers may act as record beneficiaries for deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae on Fannie Mae's demand. The Guide states:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its ... ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [ ] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.

The Guide also allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in ... legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]" Finally, under the Guide, the servicer must "maintain in the individual mortgage loan file all documents and system

---

[2] In December 2012, Fannie Mae sold the loan to BANA. BANA maintained ownership of the loan until June 2013, before repurchasing the loan in October 2015.

records that preserve Fannie Mae's ownership interest in the mortgage loan."

Finally, the Guide "permits the servicer that has Fannie Mae's [limited power of attorney] to execute certain types of legal documents on Fannie Mae's behalf." The legal documents include full or partial releases or discharges of a mortgage; requests to a trustee for a full or partial reconveyance or discharge of a deed of trust, modification or extensions of a mortgage or deed of trust; subordination of the lien of a mortgage or deed of trust, conveyances of a property to certain entities; and assignments or endorsements of mortgages, deeds of trust, or promissory notes to certain entities.

In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("FHFA"). HERA gave FHFA the authority to oversee Fannie Mae. In accordance with its authority, FHFA placed Fannie Mae under its conservatorship in 2008. Neither FHFA nor Fannie Mae consented to the foreclosure extinguishing Fannie Mae's interest in the Property in this matter.

### b. Disputed Facts

The parties dispute the legal effect of the circumstances.

### IV. LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir.

2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### b. Default Judgment

The granting of a default judgment is a two-step process directed by Federal Rule of Civil Procedure ("Rule") 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of clerk's default based on a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is default judgment under Rule 55(b), a decision which lies within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471–72.

If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847,

854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the amount of damages as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id.

**V. DISCUSSION**

    **a. Motions for Summary Judgment**

SFR argues that BANA's claims are time-barred. The Court agrees. This Court has previously found the Federal Foreclosure Bar under Section 4617(j) applies to the FHFA and the federal enterprises, and that they are subject to the six-year statute of limitations under Section 4617(b)(12)(A). See Fed. Nat'l Mortg. Ass'n v. Haus, No. 2:17-cv-01756-RFB-DJA, 2019 WL4777294 at * 3 - *4 (D. Nev. Sept. 30, 2019). The Ninth Circuit and the Nevada Supreme Court have repeatedly affirmed the ability of loan servicer-agents to assert claims on behalf of loan-owners/principals in the Federal Foreclosure Bar context. See Ditech Financial, LLC v. SFR Investments Pool 1, LLC, No. 17-16576, 2019 WL 6242262, at * 1 (9th Cir. Nov. 21, 2019) (noting that "[bank], as the loan servicer, acts as Fannie Mae's agent and has standing to assert the Federal Foreclosure Bar"); Saticoy Bay, LLC Series 2714 Snapdragon v. Flagstar Bank, FSB, No. 16-15478, *1 ( 9th Cir. Oct. 20, 2017) (same); Daisy Trust v. Wells Fargo Bank, N.A., 445 P.3d 846 (Nev. 2019) (same). Therefore, the Court finds that BANA may assert the Federal Foreclosure Bar on behalf of Fannie Mae and adopt the same limitations period.

For statute of limitations calculations, the clock begins on the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997). A cause of action accrues "when a suit may be maintained thereon." Id. In this case, the foreclosure sale was on July 11, 2012. The Court thus finds that all of BANA's claims began to run on the date of the foreclosure sale as these claims all stem from issues or disputes regarding the sale and its effect. BANA filed its original complaint

on November 1, 2016, but did not file an amended complaint raising the Federal Foreclosure Bar until March 11, 2019.

SFR thus argues that BANA's claims are time-barred, as the latest that BANA could have asserted its Federal Foreclosure Bar claim would be July 11, 2018. BANA argues that its Federal Foreclosure Bar argument relates back to the original complaint filed in November 2016. The relation back doctrine allows an amendment to a pleading to relate back to the date of the original pleading. See Fed. R. Civ. P. 15(c). The rule permits an amendment to "relate back" to the date of the original pleading (and thus use that date for statue of limitations purposes), when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Id. "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008) (internal citations omitted).

Applying that test here, the Court finds that BANA would not be using the same evidence to support its Federal Foreclosure Bar claim as it would the claims in the original complaint. To support its Federal Foreclosure Bar claim, BANA's amended complaint relies on facts that were not mentioned in the original complaint—including facts about how Fannie Mae purchased the loan and when BANA began servicing it. The evidence used to support the Federal Foreclosure Bar claim relies on documents from Fannie Mae, including internal database printouts and Fannie Mae's Servicing Guide, that would not be used to support any of the other arguments BANA made in its original complaint. The Federal Foreclosure Bar claim is thus time-barred.

As SFR rightly points out, BANA's other claims are also time-barred. BANA's other theories of recovery are either derived from statute and thus subject to a three-year limitations

period, or are derived in equity and subject to a four-year limitations period. See Carrington Mortg. Servs. LLC v. Tapestry at Town Ctr. Homeowners Ass'n, 381 F. Supp. 3d 1289, 1293 (D. Nev. 2019). It is undisputed that BANA filed its initial complaint more than four years after the foreclosure sale. Accordingly, the claims are time-barred and the Court grants summary judgment to SFR on all claims.

### b. Motion for Default Judgment

SFR also moves for default judgment against Derek L. Smith. SFR filed a cross-complaint for quiet title and declaratory against Derek L. Smith on May 1, 2017. Smith failed to answer the complaint within the required 21-day limit. The Clerk of the Court entered a default against Smith on February 22, 2019.

In considering the seven Eitel factors, the Court find that default judgment against Smith is warranted. The first and sixth factors, which ask the Court to consider 1) the possibility of prejudice to the plaintiff/party seeking default judgment and 2) whether the default was due to excusable neglect, favor granting default judgment. By failing to appear, Smith prejudiced cross-claimant SFR by denying it the ability to gain clarification as to the ownership of the Property. Additionally, the failure to appear for over three years suggests that Smith could not demonstrate excusable neglect if it was to appear now. The third and seventh factors, which require the Court to examine the sufficiency of the complaint and the Federal Rules of Civil Procedure's strong policy in favor of deciding cases on the merits, also warrants granting of the default judgment. Having reviewed its submissions, the Court finds that SFR has submitted evidence sufficient to demonstrate that it is the current title owner of the Property. There is no evidence before the Court that Smith disputes or has disputed this fact. Accordingly, the Court will grant SFR's Motion for default judgment.

## VI. CONCLUSION

**IT IS ORDERED** that Defendant SFR Investments Pool 1, LLC's Motion for Default Judgment (ECF No. 73) is GRANTED. The Court declares that Cross-Defendant Derek L. Smith and his successors or assigns, have no right, title or interest in the Property and that SFR is rightful title owner.

**IT IS FURTHER ORDERED** that Defendant SFR Investment Pool 1, LLC's Motion for Summary Judgment (ECF No. 75) is GRANTED as all of Plaintiff's claims are time-barred.

**IT IS FURTHER ORDERED** that Plaintiff Bank of America, N.A.'s Motion for Partial Summary Judgment (ECf No. 76) is DENIED as all of Plaintiff's claims are time-barred. The Court declares that the deed of trust did not survive and was extinguished by the HOA foreclosure sale in this case.

**IT IS FURTHER ORDERED** that the lis pendens filed in this case (ECF Nos. 3, 23) ar expunged.

**IT IS FURTHER ORDERED** that the $500.00 deposit (ECF No. 19), plus any accrued interest, be returned to the Legal Owner designated in the certificate.

The Clerk of the Court is instructed to enter judgment accordingly and close the case.

DATED: March 31, 2020

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**